### Gary COY *v.* Dewey STILES, Director of Labor, and EMPLOYMENT SECURITY DIVISION

E 84-42                                     679 S.W.2d 804

Court of Appeals of Arkansas
Division II
Opinion delivered November 28, 1984

*Paul E. Hopper*, for appellant.

*Alinda Andrews*, by: *Gary Williams*, for appellee.

Tom Glaze, Judge. The appellant, Gary Coy, appeals from the decision of the Board of Review, finding that he was overpaid benefits and is liable for repayment. On appeal, appellant contends that his failure to report part-time earnings while he was collecting unemployment benefits was not a misrepresentation or false statement of a material fact making him subject to repayment under Arkansas law.

The appellant was employed at General Electric in Jonesboro in July of 1981, when he contracted with the

V.F.W. Club to tend bar for two hours a day and to do the club's janitorial work for $200 a week. About two months after contracting with the V.F.W., the appellant lost his job at General Electric, and in October of 1981, he began collecting unemployment benefits. For about a year, from October of 1981 to November of 1982, the appellant drew some kind of benefits — unemployment ($3,406), extended ($1,572), or federal supplemental ($1,179).

Appellant testified before the Appeal Tribunal that he hired two other men, Carl Rupard and Gerald Ishmael, to perform the janitorial work for which he had contracted and that he did the bartending each weekday afternoon from one to three and came in on Saturday mornings to "carry out the garbage." The V.F.W. paid him $200 a week by check, which the appellant says he cashed. Out of that $200, he testified that he kept $50 for himself and paid $150 in cash to the men he hired to do the janitorial work. Appellant freely admitted at the hearing that he filled out a claim form for each week that he collected benefits and that he checked "No" to the question, "Did you work any during the above week?" He testified that he did not indicate that he had earnings for fear that "since I had been drawing unemployment a few weeks, that they would hold up my check and some kind of a mix-up in the paperwork. I've seen it done quite often. . . . " Appellant testified that Rupard and Ishmael quit doing the janitorial work at the beginning of 1983 and that since then he was doing all of the work and was collecting $200 a week.

In considering the foregoing evidence, the Board of Review, affirming the Appeal Tribunal, denied benefits to appellant under Ark. Stat. Ann. § 81-1107(f) (1), finding he willfully made a false statement of a material fact in order to receive compensation. Appellant asserts the Board erred and in part relies upon an Arkansas employment security law which provides a claimant can earn up to 40% of his or her weekly benefit amount without penalty while drawing unemployment benefits. Ark. Stat. Ann. § 81-1104(c) (Supp. 1984). He contends that under the statute he could have earned up to $52 a week, 40% of his weekly benefit amount of $131, and that he actually earned only $50 a week, the amount he claims to have kept of the $200 paid to him each

week by the V.F.W. This being so, appellant claims that he would have collected the same benefits even had he reported his part-time income; consequently, he argues that his failure to disclose he worked and earned $50 weekly was not material.

Appellant cites *Fleury* v. *State,* 114 N.H. 528, 323 A.2d 919 (1974), to persuade us to construe his failure to report income as not "material" within the meaning of our statute. In *Fleury,* a claimant failed to report that he had received an offer of work. The New Hampshire Supreme Court, in affirming the lower court, held that his failure to report was not material so as to disqualify him from receiving unemployment benefits. The court said:

> [T]he determination whether an applicant for benefits has "wilfully" made a false statement or "knowingly" failed to disclose a "material fact . . . to obtain . . . any benefit" is necessarily factual in nature, as is the determination of what is "material".

*Id.* at 531, 322 A.2d at 921.

The New Hampshire Court's reasoning in *Fleury* is sound, but we believe it supports the position of the appellee rather than the claimant. Whether the appellant's failure to report part-time earnings was or was not material within the meaning of the Arkansas statute was a fact question for the Board of Review. In *Fleury,* the Court determined the claimant's act was not material. Here, the Board decided the fact question adversely to the appellant, and we find substantial evidence to support the Board's findings. Even though appellant could have earned up to $52 a week and still have been eligible for benefits, our statutes require that the part-time income be reported. Appellant signed a statement each week saying that he did not work during that week. As the Director pointed out in his brief, knowledge of the appellant's employment status was of significance to the Agency because it had the responsibility of determining any possible effect a part-time job had upon his eligibility. In addition to determining whether he was entitled to full or reduced benefits. the agency had to determine whether he was available for full-time permanent work, as the statute

requires him to be in order to maintain his eligibility. For these reasons, the Board could well determine that his failure to report was indeed "material" within the meaning of the statute.

Appellant also claims the instant case is factually distinguishable from *Eden* v. *Daniels,* 269 Ark. 690, 600 S.W.2d 416 (Ark. App. 1980). Mr. Eden, the claimant, failed to report any earnings from a contract job to paint Mr. Swanson's house. Eden contended that he did not paint the house, but that his brother was the one who actually did the job. Eden claimed that he received only $88 out of the $588.20 Swanson paid on the contract, and that was reimbursement for money his brother had borrowed from him. This Court found, however, that the Board could infer from the events that Eden intentionally misrepresented a material fact when he filed his claim for unemployment benefits. We pointed out that Eden's own testimony established (1) that Eden advertised for the job; (2) that Eden's truck, tools, and equipment were used to paint the house; (3) that Eden participated in the work (he claimed he painted a door only); (4) that Eden went with his brother to be paid; (5) that Swanson wrote a check in Eden's name alone; and (6) that Eden actually received at least a part of the proceeds. We find the facts in *Eden* quite similar to the facts at bar. *Eden* turned—not on whether Mr. Eden had earned more than 40% of his weekly benefit amount—but upon whether the Board's inferences were consistent with the facts of the case.

In the instant case, the appellant admitted that he was the one who signed a written contract with the V.F.W. to tend bar and to provide janitorial services; that he did, in fact, provide services under that contract; that the V.F.W. wrote a $200 check each week to appellant; and that appellant received at least $50 of each check. In addition, there were contradictions in appellant's testimony at the hearing and his statement on an Employment Security Worksheet[1] that provided fact questions and credibility

[1]The appellant did not sign the worksheet statement and at the hearing, he denied having written it. However, an employee at the Employment Security office noted that Coy gave the disputed statement, took it to check against his records, but never returned it to the office. On December 21, 1982, appellant did sign a statement that he would cooperate in any way on his case.

questions for the Board to resolve.

Although we believe the appellant made a good argument on the question of materiality, we also believe that the question of materiality was one of fact for the Board to resolve. We find substantial evidence here; therefore, we affirm.

Affirmed.

COOPER and MAYFIELD, JJ., agree.